**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Malik WARD, Defendant–Appellant.**

No. 95–1284.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 13, 1995.

Decided Oct. 25, 1995.

David Debold (argued), Stephen J. Murphy, III (briefed), Office of the U.S. Atty., Detroit, MI, for plaintiff–appellee.

Margaret Raben (argued and briefed), Gurewitz & Raben, Birmingham, MI, for defendant–appellant.

Before: ENGEL, GUY, and SUHRHEINRICH, Circuit Judges.

ENGEL, Circuit Judge.

Defendant Malik Ward appeals his sentence as imposed by the district court. Ward was convicted of various offenses involving narcotics and firearms, including conspiracy to distribute controlled substances, 21 U.S.C. §§ 841(a)(1), 846, and running a continuing criminal enterprise, 21 U.S.C. § 848. The district court merged the conspiracy count with the continuing criminal enterprise count, vacating the conspiracy count. On appeal, we vacated the conviction for the continuing criminal enterprise, reinstated the conspiracy conviction, and remanded the case to the district court for resentencing. *United States v. Ward,* 37 F.3d 243 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1388, 131 L.Ed.2d 240 (1995). On resentencing, the district court set the base offense level under the United States Sentencing Guidelines at 34 and enhanced the level by four points because of Ward's role in the offense, under U.S.S.G. § 3B1.1(a). The court sentenced Ward to 235 months, in addition to a mandatory ten-year consecutive sentence on another count. On this appeal, Ward contends that the district court erred both in establishing the base offense level at 34 and in enhancing the level by four points. Because we find as to both issues that the district court was not clearly erroneous, we affirm.

Ward was part of an extensive drug operation in Detroit. He rented a house on Blackstone Avenue with Ronald Hicks, who pled guilty to various charges. Hicks and two of Ward's cousins, and sometimes Ward, sold drugs from the Blackstone house. Ward generally acted more as a supplier: he would provide Hicks with drugs, and Hicks would pay for the drugs after he sold them. Ward and his girlfriend, Cherisse Thomas, lived in an apartment on Telegraph Avenue. Hicks and his girlfriend, Sadie Ramnares, often went to the Telegraph apartment to buy drugs that Hicks would then sell. Ramnares

testified that she saw Ward every day in 1991 and 1992, either at the Blackstone house or at the Telegraph apartment.

In 1992, Agent Michael Yott of the Bureau of Alcohol, Tobacco and Firearms arranged several undercover drug purchases from Hicks. Yott discovered that Hicks was getting his drugs from Ward. On August 18, 1992, Yott executed a search warrant at Ward and Thomas's apartment. He found, among other things, cocaine, cocaine base, guns, scales, Ziploc bags, a jar, rubber gloves, single-edged razor blades, a safe, financial documents, and large amounts of cash.

### The drug-quantity issue

■ Ward contends that the district court clearly erred in setting his base offense level at 34 instead of 32. The district court, adopting the view of the Presentence Investigation Report, held Ward responsible for 616.52 grams of cocaine and 179.43 grams of cocaine base, which is the equivalent of 3,711.9 kilograms of marijuana, under the Drug Equivalency Tables in U.S.S.G. § 2D1.1, commentary, application note 10. This was the same amount of drugs attributed to Hicks. Under the Guidelines, a base offense level of 34 is applied to at least 3,000 kilograms but less than 10,000 kilograms of marijuana. § 2D1.1(c)(3). At least 1,000 kilograms but less than 3,000 kilograms would yield a base offense level of 32. § 2D1.1(c)(4).

Ward asserts that the evidence ties him to only 2,943.3 kilograms of marijuana.[1] This sum includes the weights of all drugs that were directly linked with Ward. The Presentence Investigation Report, however, also attributed to Ward all drugs that were directly tied to Hicks. Ward argues that because the court did not make a finding that Ward was Hicks's sole supplier, the court was engaging in mere speculation in holding Ward responsible for more than 3,000 kilograms, and that this speculation failed to meet the standard of preponderance of the evidence.

1. According to the numbers in Appellant's Brief, the claimed sum would actually be 2,949.3 kilograms.

Under the Sentencing Guidelines, when there is "jointly undertaken criminal activity," the base offense level is determined by not only acts committed by the defendant but also "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity...." U.S.S.G. § 1B1.3(a)(1)(B). Commentary in the Guidelines provides as follows:

> Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance. In making this determination, the court may consider, for example, the price generally obtained for the controlled substance, financial or other records, similar transactions in controlled substances by the defendant, and the size or capability of any laboratory involved.

U.S.S.G. § 2D1.1, commentary, application note 12.

■■■ The district court's decision as to the amount of drugs for which Ward is responsible must stand unless it is clearly erroneous. *United States v. Walton,* 908 F.2d 1289, 1300–01 (6th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229, and *cert. denied,* 498 U.S. 989, 111 S.Ct. 530, 112 L.Ed.2d 541, *and cert. denied,* 498 U.S. 990, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). When estimating an amount of drugs as directed in Application Note 12, a court must err on the side of caution. *Id.* A court may hold a defendant responsible for an amount of drugs only if the court finds that it is more likely than not that the defendant actually was responsible for at least that amount. *Id.* at 1302. An approximation by a court is not clearly erroneous if it is supported by competent evidence in the record. *United States v. Brannon,* 7 F.3d 516, 520 (6th Cir.1993). In other words, the court finding must have "some minimum indicium of reliability beyond mere allegation." *United States v. Smith,* 887 F.2d 104, 108 (6th Cir.1989) (quoting *United States v. Baylin,* 696 F.2d 1030, 1040 (3d Cir.1982)).

The validity of the sentence in a case in which the district court judge approximates an amount of drugs therefore depends on the basis of the court's calculation. In *Walton,* two of the defendants had been linked directly to less than 25 grams of cocaine. The district court, citing evidence that showed that the defendants had dealt in at least 3.5 grams of cocaine a week over the course of one month, assumed that this rate of dealing had continued for over two years afterwards. The court extrapolated to find the defendants responsible for 455 grams of cocaine. There was no circumstantial evidence to support this extrapolation, however, so we vacated the sentences. *Walton,* 908 F.2d at 1302–03.

In *United States v. Baro,* 15 F.3d 563 (6th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 285, 130 L.Ed.2d 201 (1994), the defendants argued at sentencing that evidence tied them to only 49 kilograms of cocaine, which would have placed them in base offense level 34. The government pointed to evidence that the defendants had made regular trips to Miami and claimed that the defendants had distributed at least one more kilogram of cocaine. It argued that this evidence supported the one-kilogram increase necessary for a base offense level of 36. The district court assigned a base offense level of 36. Because the district court "failed to identify the evidence on which it relied," *id.* at 569, we remanded both defendants' cases for resentencing, noting that "[g]iven the marked impact of this single kilogram increase on the defendants' sentences, the district court should explicitly set forth the evidence on which it relies." *Id.*

Similarly, in *United States v. Medina,* 992 F.2d 573 (6th Cir.1993), *cert. denied sub nom. Wilson v. United States,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371, *and cert. denied,* —— U.S. ——, 114 S.Ct. 1049, 127 L.Ed.2d 371 (1994), we vacated two defendants' sentences because of the trial court's failure to make the finding necessary to support the sentences. The defendants were part of a conspiracy to distribute drugs. The trial court attributed to the defendants all of the drugs involved in the conspiracy. It did not make a finding that it was reasonable to impute knowledge of the whole extent of the conspiracy to the two defendants, however, so on appeal, we vacated the sentences.

In *United States v. West,* 948 F.2d 1042 (6th Cir.1991), *cert. denied,* 502 U.S. 1109,

112 S.Ct. 1209, 117 L.Ed.2d 447 (1992), the defendant challenged a sentence based on a finding that attributed to him 15 kilograms of cocaine. The defendant contended that the evidence tied him to only one gram of cocaine. We upheld the sentence because the district court's finding was based on testimony that the defendant had been involved in many transactions, each involving over four kilograms of cocaine. *Id.* at 1045.

The case before us is more similar to *West* than to any of the cases in which we vacated defendants' sentences for lack of necessary findings by the trial court. The district court judge clearly spelled out the reasons for his conclusion that Ward was responsible for over 3,000 kilograms of marijuana; he was not speculating. As the court noted, "[I]t's amply demonstrated by the evidence that Mr. Ward is indeed responsible for and chargeable with the amount of drugs as set forth in the ... Presentence Report: that is, ... 3,711.9 kilograms of marijuana." (J.A. at 586.) Summarizing this evidence, the court specified that

> the total amount of drugs was based on Mr. Hicks' transactions, the various undercover buys, the seizures of controlled substances at drug houses in which Mr. Hicks was involved, drug houses in which Mr. Ward was involved, statements made by other codefendants during the investigation, testimony given in grand jury proceedings, testimony at trial, and by statement and testimony given by Mr. Hicks himself.

(*Id.* at 587.) Furthermore, the court elaborated that under the standard of reasonable foreseeability in U.S.S.G. § 1B1.3(a)(1)(B), Ward was "accountable for the total drug quantity involved in the conspiracy." (J.A. at 587.)

Even if the district court had not attributed all of the drugs involved in the conspiracy to Ward, there would be enough evidence of Ward's dealings to justify the base offense level of 34. As Ward admits, he is directly linked to 2,943.3 kilograms of marijuana. To reach 3,000 kilograms, less than 300 grams of

cocaine or 3 grams of cocaine base would be necessary. Ramnares testified that she went to the Blackstone house every day, with Hicks, and that Ward was there every time that Hicks was. (J.A. at 344.) When asked what Ward did there, Ramnares said that he sold cocaine and cocaine base, by the ounce or half-ounce.[2] (J.A. at 345–48.) Ramnares also went to Ward and Thomas's apartment about ten times. On these occasions, Hicks would get drugs from Ward to sell. (J.A. at 356.) All in all, Ramnares saw Ward every day in 1991 and 1992. (J.A. at 362.) Yott's testimony also establishes the extent of Ward's involvement in drug distribution. Aside from drugs, the amounts of which are included in Ward's figure of 2,943.3 kilograms, Yott found guns, scales, Ziploc bags, a jar, rubber gloves, single-edged razor blades, a safe, financial documents, and large amounts of cash. Yott testified that in his experience, all of these items were tools of drug traffickers. (J.A. at 447–553.) The district court judge would have had to close his eyes to all this evidence to attribute to Ward less than 3,000 kilograms of marijuana. He was not clearly erroneous in assigning Ward a base offense level of 34.

Ward acknowledges that there is an overlap between the range of permissible sentences under base offense levels 32 and 34. Because he received the lowest possible sentence under base offense level 34, his sentence would be consistent with a base offense level of 32. In arguing that the drug-quantity issue is not harmless error, Ward notes that both at the original sentencing and at resentencing, the district court judge sentenced him to the minimum term within the authorized range. (Appellant's Br. at 11–12.) As Ward points out, the district court judge seemed inclined to be lenient. It is clear from the record, though, that however lenient the judge wanted to be, he could not escape the conclusion that the evidence strongly preponderated in favor of finding that more than 3,000 kilograms of marijuana were attributable to Ward and that therefore a base offense level of 34 was required by the

---

2. One ounce equals approximately 28.35 grams. U.S.S.G. § 2D1.1, commentary, application note

10.

facts of the case. The trial judge felt himself bound by the facts he believed to be true, notwithstanding his personal distaste for the minimum penalty mandated by the Guidelines. This fair-minded judicial approach is to be commended, and we support it.

### The enhancement issue

■■■ Ward also contends that the district court clearly erred in adding four points to his base offense level because of his role as an organizer or leader. The district court's finding that enhancement was warranted under § 3B1.1(a) is subject to review for clear error. *United States v. Williams*, 962 F.2d 1218, 1226 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992). The finding must have been based on the preponderance of the evidence. *United States v. Castro*, 908 F.2d 85, 90 (6th Cir. 1990).

Under the Sentencing Guidelines, the base offense level is increased by four points "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." U.S.S.G. § 3B1.1(a). As the district court noted, it is not necessary for the defendant to have organized or led four or more participants. If the defendant organized or led at least one participant, and if the activity involved five or more people or was otherwise extensive, then four points are added. U.S.S.G. § 3B1.1, commentary, application note 2.

We agree with the district court's finding that Ward "was certainly ... an organizer or leader in a criminal activity that involved five or more persons." (J.A. at 589.) The district court in fact found that the activity not only involved nine or ten people but was also "extensive," and that at least four people were under Ward's control. (J.A. at 589–90, 595.) Although, as Ward pointed out, the government did not ask the witnesses direct questions such as "Was Malik bossing you around?" (J.A. 572), the court's findings are supported by the preponderance of the evidence and are not clearly erroneous.

For the foregoing reasons, the judgment of the district court is AFFIRMED.