95 F.3d 1153
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gary WEST, Defendant-Appellant.
 No. 95-5796.
 United States Court of Appeals, Sixth Circuit.
 Aug. 16, 1996.
 
 Before: BROWN, MARTIN and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Gary West appeals his jury conviction and sentence on charges of conspiracy to possess and utter counterfeit money and the substantive charge of possessing and uttering counterfeit money, in violation of 18 U.S.C. §§ 371, 472. The issues he raises concern the sufficiency of the evidence to support his convictions, the enhancement of his sentence based upon his role as an organizer or leader, and an upward departure in his sentence because of his use of a firearm. We affirm.
 
 I. FACTS
 
 2
 This case presented a strange set of facts. In 1992, West and Reginald Jackson, a codefendant, worked together in selling drugs in Memphis. West would supply drugs to Jackson, who would then sell the drugs and deliver the proceeds to West in exchange for more drugs. West told Jackson that he was going to receive some counterfeit money from the West Coast and use it to purchase cocaine.
 
 
 3
 On May 28, 1992, a package containing approximately $30,000.00 in counterfeit money was delivered by Federal Express to 1012 Eldridge in Memphis. It was addressed to "Harris," which was an alias used by West. Jackson lived at 1010 Eldridge, the other half of the duplex containing 1012 Eldridge. However, the package was delivered to the occupant, Robert Pink, of 1012 Eldridge. When he opened the package, he found the counterfeit money and left with it. When West discovered that the package may have been delivered to Pink's address, he and Jackson entered Pink's apartment and discovered Marcia Brown. Brown told West and Jackson that Pink had gone to a gasoline station. West and Jackson went to the station and found Pink, who convinced them that Brown still had the package back at the duplex. West and Jackson then returned to the duplex and held Brown hostage for several hours. On both occasions when they were in the apartment with Brown, they brandished firearms and threatened her. Jackson and West told Brown that Pink would be hurt if the money was not returned.
 
 
 4
 In the meantime, Pink had fled to Nashville. He became afraid after hearing of the threats, so he sent a package containing $23,000.00 in counterfeit bills to "Red Bone" (Jackson's alias) at 1010 Eldridge. When the counterfeit money was delivered to 1010 Eldridge, Jackson and Neal Sampson, another codefendant, accepted it and later used it to purchase drugs and to pass the money through friends in Tennessee.
 
 
 5
 Jackson and Sampson pled guilty to the charges of conspiracy and possession of counterfeit money. West went to trial and was found guilty on both charges. He was subsequently sentenced to 78 months.
 
 
 6
 Codefendant, Jackson, appealed his sentence. He raised the same issues on sentencing that are raised herein by West, that is, he claimed the court erred by enhancing his offense level because of his role as an organizer and leader and by departing upward due to the use of a firearm. His case was affirmed by an unpublished opinion in United States v. Jackson, 73 F.3d 362, 1995 WL 758438 (6th Cir.1995).
 
 II. SUFFICIENCY OF THE EVIDENCE
 
 7
 West claims that there was insufficient evidence at trial upon which he could be convicted of either the conspiracy or the substantive charge involving the counterfeit money. The question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (citation omitted). In this case, there is more than ample evidence upon which the jury could find that West participated in the conspiracy and aided and abetted in the possession and uttering of the counterfeit money. Although he did not direclty participate in the uttering of the counterfeit bills, he was the one that set in motion the shipment of the bills to the address in Memphis, and it was his confederates, Jackson and Sampson, along with Pink, who put the money into circulation.
 
 
 8
 West has attacked the conviction primarily upon the quality of the evidence presented against him. He suggests that the inculpatory evidence by Jackson, Pink, Brown, and Sampson was unreliable and contradictory. However, it is up to the jury to weigh the evidence and to resolve conflicts in the testimony. Id.
 
 III. ORGANIZER OR LEADER
 
 9
 In sentencing West, the district court applied a four-level enhancement under USSG § 3B1.1(a) for his role as an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. The court relied upon the "otherwise extensive" part of § 3B1.1(a), and this determination was not clearly erroneous. See United States v. Ward, 68 F.3d 146, 151 (6th Cir.1995), cert. denied, 116 S.Ct. 1028 (1996). Here, the activity was extensive because it involved the shipment of money from California, at least $5,000.00 was passed, many people were engaged in passing the bills, and several businesses lost money as a result. The district court not only considered West's leadership in initially causing the counterfeit package to be sent to Memphis, but also in his leadership role in attempting to intimidate others when they were trying to get the package back from Pink.
 
 IV. UPWARD DEPARTURE FOR USE OF WEAPON
 
 10
 The court computed the total offense level at 17, when considering the four-level increase for being an organizer or leader under § 3B1.1(a). In addition, the court departed upward five levels because West, along with Jackson, brandished, displayed and possessed a firearm when he spoke with Brown at Pink's residence in their attempt to find the package containing the counterfeit money. Under USSG § 5.K2.6, if a weapon is used or possessed in the commission of the offense, the court may depart upward. The court analogized the departure to the specific offense characteristic for robbery and extortion under § 2B3.1(b)(2)(C) and § 2B3.2(b)(3)(a)(iii), which provides for an increase by five levels in cases when a firearm was brandished, displayed or possessed.
 
 
 11
 West does not dispute the fact that the court could depart upward because of his possession of the firearm under the circumstances of this case. However, he argues that the court should have analogized the facts of this case to that of offenses involving drugs under USSG § 2D1.1(b)(1), which provides for an increase by two levels when a dangerous weapon is possessed in a drug trafficking offense. We do not find that the district court erred by analogizing this situation to that involving robbery and extortion, because West made threats and intimidated Brown. His conduct was not inherently nonviolent, as he claims.
 
 
 12
 AFFIRMED.