**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Julius LOVE, Defendant–Appellant.**

**No. 02–1027.**

United States Court of Appeals,
Sixth Circuit.

Nov. 1, 2002.

Before KEITH, KENNEDY, and
MOORE, Circuit Judges.

*ORDER*

This is a direct appeal from a judgment and commitment order in which the only issues raised are addressed to the application of the sentencing guidelines. The parties have agreed to waive oral argument and, upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 2001, Julius Love was named in a two-count indictment in connection with cocaine distribution and firearm possession. Love subsequently entered into an agreement to plead guilty to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of cocaine base and 5 kilograms of more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A). The district court found Love guilty on his plea and sentenced Love to a 121–month term of imprisonment and a five-year period of supervised release.

Law enforcement agents in Grand Rapids, Michigan, began to investigate Love's possible role in a Chicago-based cocaine distribution operation in 2000. Authorities served a search warrant on Love's dwelling on July 28, 2000, but Love was not home. Instead, officers were greeted at Love's front door by Anthony Kimble. The officers found one marijuana brick, several containers with marijuana residue, and two handguns. Grand Rapids police officers spoke with Love's neighbor, Corey Fenn, sometime in early June 2001. Fenn admitted to police that he was using his house to store drugs and weapons for Love, and Fenn consented to a search of the house. Officers found handguns, a rifle scope, three bags of crack cocaine and one bag of powder cocaine during the

search, all of which Fenn claimed belonged to Love.

Fenn was interviewed by police contemporaneously with the search of his house. The substance of the interview, as relevant to this appeal, reads as follows:

Mr. Fenn stated he had stored large amounts of cocaine, marijuana, and several guns at his home for Julius Love for the 18 months immediately preceding June 2001. Mr. Fenn explained he was paid $50.00 to $200.00 by Mr. Love for storing these items at his residence. Mr. Fenn estimated he had stored 20 to 30 kilograms of cocaine for Mr. Love during the 18 month period. Mr. Fenn specifically recalled for police that near the middle of May 2001, Mr. Love directed him to pick up 4 kilograms of cocaine for storage at his [Fenn's] home.

A grand jury indicted Julius Love (and Anthony Kimble) on July 11, 2001, based in part on the seized contraband and acquired information described above. Love entered into a cooperation agreement with the government on July 31, 2001, and participated in an interview in which he confirmed many of the allegations against him found in the indictment. The government and Love thereafter entered into a formal agreement whereby Love would offer his guilty plea to conspiring to distribute cocaine base and cocaine and the government would move to dismiss the firearm count. The government specifically stipulated that, insofar as they were aware, Love's base offense level should not be enhanced as a "manager, leader, organizer or supervisor" under Chapter 3 of the guidelines. This latter stipulation, however, like the others contained in the agreement, was not binding on the district court.

The district court accepted the agreed upon plea and set the matter over for sentencing. The probation officer responsible for preparation of the pre-sentence report recommended, in part, that Love's base offense level should be enhanced three levels in recognition of Love's role as a manager or supervisor of the criminal enterprise. USSG § 3B1.1(b). Counsel for Love objected to this recommendation at sentencing. The district court heard argument on the objection and ultimately adopted the recommendation. Counsel for Love did not argue before or after the district court's decision on this question that the § 3B1.1(b) enhancement was based on unusable, or "protected," information. The court proceeded to give Love the sentence of record.

On appeal, counsel for Love contends that the district court erred in calculating the base offense level with the § 3B1.1(b) enhancement because the information supporting this enhancement was obtained in the "protected" atmosphere of Love's cooperation interview. Counsel also argues that, regardless of the source of the information, the § 3B1.1(b) enhancement was based on insufficient information.

A review of the record and law shows the meritless nature of this appeal. The district court added three levels to Love's base offense level in recognition of Love's role in the offense as a manager or supervisor within the meaning of USSG § 3B1.1(b). This enhancement applies when the defendant was "a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive[.]" There is no dispute but that the criminal enterprise involved five or more participants. The government must prove this finding by a preponderance of the evidence. *United States v. Ward,* 68 F.3d 146, 151 (6th Cir.1995). Whether these facts warrant a sentence enhancement pursuant to § 3B1.1(b) is a legal conclusion subject to de novo review. *United States*

*v. Gort–DiDonato,* 109 F.3d 318, 320 (6th Cir.1997).

Counsel's reference to Love's "protected" disclosures is an allusion to USSG § 1B1.8, which prohibits the sentencing court from using against a defendant any self-incriminating information that the defendant may have provided pursuant to a cooperation agreement that guaranteed as much. Counsel for the government argues, with some force, that Love's failure to raise this objection at sentencing precludes this court's review for anything other than plain error, a standard that places a tremendous burden on the defendant on appeal. Even if we agreed with Love's objection, however, the appeal still lacks merit. Consideration of the contraband discovered prior to the cooperation interview, as well as Fenn's independent description of Love's role in the offense, shows that the court had ample evidence to support the enhancement even if the potentially "protected" information offered by Love was excluded. The district court clearly believed Fenn's version of his relationship with Love in the criminal conspiracy. Not only is there no evidence of record to the contrary, but the physical evidence discovered at the dwellings of Fenn and Love supports this belief. The district court articulated the reasons it decided to apply the § 3B1.1(b) enhancement and those reasons are supported by the record. This assigned error lacks merit.

Accordingly, the district court's judgment is affirmed.