NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0268n.06

Nos. 14-1277/1415

FILED
Apr 14, 2015
DEBORAH S. HUNT, Clerk

**UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| EVE OLIVAREZ; REM TO, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellants. | ) | |
| | ) | |
| | ) | |

BEFORE:    BATCHELDER, SUTTON, and COOK, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.   This case is a combined appeal in which Defendants Eve Olivarez and Rem To ask this court to review their sentences.  Olivarez and To pleaded guilty to trafficking crystal methamphetamine in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(B)(viii).  Olivarez received a sentence of 210 months' imprisonment followed by four years of supervised release.  [R. 91 at Pg. ID#459–60]  To received a sentence of 170 months' imprisonment followed by four years of supervised release.  [R. 98 at 508–09]  We AFFIRM.

**I.**

In January 2012, law enforcement officials discovered that Eve Olivarez was trafficking drugs out of her home in Zeeland, Michigan.  [R. 70 at Pg. ID#233–35]  When officers searched the home, they discovered unspecified amounts of marijuana and crystal methamphetamine ("meth").  [*Id.*]  They also seized a blade, two digital scales, drug paraphernalia, tracking

receipts, a ledger book, a laptop, glass pipes, Money Gram receipts, residency paperwork, and some cash. [*Id.*] After further investigation, law enforcement officials determined that Rem To, Olivarez's cohabiting boyfriend, was also involved in the drug trafficking scheme and that To's sisters in California were responsible for shipping the drugs to Olivarez and To. [*Id.*]

During the course of the investigation, law enforcement officials traced financial and shipping records, interviewed five separate informants, and questioned Olivarez, To, and To's sisters. [*Id.*; R. 71 at Pg. ID#272–73] From these sources, it became clear that Olivarez was known as "the boss" of the operation. [*Id.*] Not only did she traffic crystal meth, she was also addicted to it. [R. 70 at Pg. ID#235–36, 250–51] It did not appear that To was addicted to the drugs, but he was thoroughly involved in the trafficking operation. [R. 71 at Pg. ID#272–75] Unfortunately, only a limited quantity of drugs was seized in the course of the investigation. This made it necessary for law enforcement and probation officers to approximate the quantity of drugs that had been trafficked during the course of Olivarez and To's operation. By conservative estimates, the probation officers determined that Olivarez and To were both responsible for trafficking at least 283.5 grams of crystal meth. [R. 70 at Pg. ID#239–40; R. 71 at Pg. ID#276–77]

In June 2013, Olivarez and To were arrested on charges of possessing crystal meth with the intent to distribute. [R. 70 at Pg. ID#232; R. 71 at Pg. ID#269] Both of them pleaded guilty to violating 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(B)(viii). [R. 84 & 90] At Olivarez's sentencing, the district court determined that she trafficked 50 to 150 grams of crystal meth and used her home in the trafficking operation. [R. 91 at Pg. ID#444–45] This calculation, coupled with her Category IV criminal history, placed her sentence range at 210 to 262 months. [*Id.*] The district court imposed a final sentence of 210 months. At To's sentencing, the district court

determined that he trafficked 150 to 500 grams of crystal meth and used his home in the trafficking operation. [R. 98 at Pg. ID#499, 504] This calculation placed his sentence range at 188 to 235 months; however, the district court granted an 18-month downward variance, and imposed a final sentence of 170 months. [*Id.* at 503–04, 508]

## II.

There are four issues in this appeal: (1) Olivarez appeals the district court's decision to enhance her sentence based upon her maintaining a premises for the purpose of drug distribution; (2) both Olivarez and To appeal the district court's refusal to grant reductions based upon their acceptance of responsibility; (3) To appeals the district court's decision to find that he had trafficked at least 260 grams of meth; and (4) Olivarez appeals the district court's decision to deny her motion for a downward variance based upon the nature of her criminal history and her efforts at rehabilitation.

Appellate courts review a district court's sentencing decisions with a high degree of deference:

> Regardless of whether the sentence imposed is inside or outside the Guidelines range, the appellate court must review the sentence under an abuse-of-discretion standard. . . . The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall v. United States*, 552 U.S. 38, 51 (2007). If the sentencing decisions of the district court are reasonable in light of the standards set by 18 U.S.C. § 3553(a), then this court has no reason to interpose its judgment into the matter. *Id.*

## III.

The first issue on appeal is the district court's two-point enhancement of Olivarez's baseline sentence based on the fact that she maintained her home for the purpose of drug trafficking. According to U.S.S.G. § 2D1.1(b)(12), "If the defendant maintained a premises for

the purpose of manufacturing or distributing a controlled substance, increase by 2 levels." As we noted in *United States v. Bell*, this circuit "has not settled on the proper standard of review for assessing such enhancements." 766 F.3d 634, 636 (6th Cir. 2014) (comparing *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002) (reviewing for clear error) with *United States v. Sweet*, 630 F.3d 477, 480 (6th Cir. 2011) (reviewing *de novo*)). Nevertheless, we need not answer this question here since Olivarez's claim fails under either *de novo* or clear error review. In *United States v. Johnson*, we stated that this enhancement is properly applied "to anyone who (1) knowingly (2) opens or maintains any place (3) for the purpose of manufacturing or distributing a controlled substance." 737 F.3d 444, 447 (6th Cir. 2013). To make this determination, the district court may consider the significance of the premises to the drug operation, the extent to which the defendant had access to and control over the premises, and the presence of tools and equipment used specifically for drug trafficking. *Id.* at 447–48; *see also Bell*, 766 F.3d at 636–38.

Here, there is ample evidence to support the finding of the district court. The drugs were sent to the home, divided and weighed in the home, stored in the home, packaged in the home, and distributed from the home. [R. 91 at Pg. ID#430–34] The veracity of these facts is not disputed by Olivarez. Rather, she argues that this was merely a collateral use of the home instead of a primary use. Appellant's Brief at 24–25. But it does not matter if the defendant has not used his *whole* house for the *sole* purpose of drug trafficking, so long as it is one of his principal uses for *some* of the house. *Johnson*, 737 F.3d at 447. Even if the defendant's home is not the scene of frequent drug transactions, the mere storage of drugs on the premises makes the home continuously available to the trafficking operation. *Id.* at 447–48. Olivarez has provided no evidence to controvert the district court's conclusion.

The second issue on appeal is the district court's denial of Olivarez and To's motions for two point reductions based on their acceptance of responsibility. The same issue was entertained by this court in *United States v. Angel*, where we stated that "[t]he district court's determination regarding acceptance of responsibility must be sustained unless clearly erroneous." 355 F.3d 462, 476 (6th Cir. 2004). With respect to Olivarez, after reviewing the record, there is nothing in the district court's decision that is clearly erroneous. [R. 91 at Pg. ID#436–44] The judge reviewed all of the facts submitted to him and concluded that "it's just this outright denial over and over again of what she did and how she did it and who she was with." [*Id.*] Similarly, with respect to To, after reviewing the record, there is no indication of clear error. [R. 98 at Pg. ID#487–500] Even To's own attorney admitted that it was difficult for To to claim acceptance of responsibility in light of his obstinacy and repeated denials. The judge pointed out To's numerous lies and concluded that "when it comes to acceptance of responsibility, he's out of bounds." [*Id.* at 503] Olivarez and To have not presented any evidence to this court to controvert the district court's conclusions.

The third issue on appeal is the district court's manner of calculating the quantity and quality of drugs attributed to To. This court has held that "[w]e review a district court's drug quantity determination for clear error." *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000). Because of the nature of drug trafficking conspiracies, it is not always possible for the court to know the exact quantity of the drugs for which the defendants should be charged. In such cases, "[a]n approximation by a court is not clearly erroneous if it is supported by competent evidence on the record." *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995). In this case, the district court's decision is certainly supported by competent evidence in the record. The judge considered the history of the operation, the nature of the investigation, the evidence

presented by all parties, the nature of the drug being distributed, the amount of money involved in the operation, the nature of the transactions that were investigated and described, and the direct testimony of To's sisters. [R. 98 at Pg. ID#496–99] After reviewing all of these facts, the judge concluded that his finding of 260 grams was "clearly right on target with what was given here and the nature of these people coming and going all hours of the day or night in this matter." [*Id.*] No evidence has been presented to this court to controvert this conclusion.

The final issue on appeal is the district court's denial of Olivarez's motions for a downward variance from the Guidelines based on her efforts at rehabilitation and the nature of her criminal record. In her plea agreement, Olivarez retained the right to appeal the district court's decisions pertaining to the interpretation and application of the Sentencing Guidelines, but she waived her right to appeal the district court's decisions pertaining to variances and departures from the Guidelines. [R. 64 at Pg. ID#166] Thus, we do not need to speak to the merits of this issue. Nevertheless, even if this issue were properly appealable, there is nothing in the record that indicates that the district court abused its discretion by refusing to vary from the Guidelines on account of Olivarez's criminal history and efforts at rehabilitation. The judge specifically noted that the Guidelines sentence was consistent with the proper purpose and intent of punishment in this case. [R. 91 at Pg. ID# 458–61] No evidence has been presented to controvert this conclusion.

On each of these issues, the district court did not err or abuse its discretion. Olivarez and To have not provided any evidence to show that their sentences were improperly decided by the district court. For these reasons, we AFFIRM.