RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 13-6530

CARTER CHRISTIAN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:12-cr-20364—Jon Phipps McCalla, District Judge.

Argued: August 4, 2015

Decided and Filed: October 30, 2015

Before: SUTTON and DONALD, Circuit Judges; ZOUHARY, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, for Appellant. Brian K. Coleman, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Kevin M. Schad, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Cincinnati, Ohio, Howard B. Manis, MANIS LAW FIRM, Memphis, Tennessee, for Appellant. Brian K. Coleman, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

---

**OPINION**

---

ZOUHARY, District Judge.  Carter Christian spent Halloween 2013 masquerading as the lawful operator of a semi-truck pulling a load of tires.  The semi he drove was in fact stolen.  So was its load.  Memphis police saw through the disguise and arrested Christian.  The arrest would have been bad enough, but Christian was expected in federal court the next morning, when a district judge would sentence him for a different conviction of possession of stolen goods, the underlying offense in this case.  Worse still, the earlier possession offense centered on Christian's role in another truck theft ring.

Christian appeals his conviction and 105-month sentence.  We agree with Christian that the district court erred in applying a two-level upward adjustment based on Christian's alleged managerial role in the theft ring.  We therefore vacate the sentence and remand.

BACKGROUND

Christian was part of a four-member Memphis truck theft ring, working alongside Patrick Dubose, Leonard Davis, and co-defendant Marcus Lanton.  The theft ring first struck in May 2011, stealing a Mayflower moving truck.  In August 2011, the thieves traveled to Big M Transportation in northern Mississippi, where they stole two semis containing 2,800 tires.  And finally, in June 2012, the theft ring stole an SDR Trucking semi loaded with tires.  A sting operation caught Davis selling tires.  Davis unwittingly led police to a Hickory Hills Road storage unit in Memphis, rented by Christian's girlfriend.  There, police observed Christian, Lanton, and Davis loading stolen tires into Lanton's car.

Memphis police arrested the three men.  We do not know what became of Davis, because only Lanton and Christian were prosecuted in federal court.  Lanton and Christian lingered for a while in state court, before state authorities dismissed theft charges against the pair in favor of federal prosecution.  At that time, Christian had a second, unrelated state prosecution.  On that second case, he was represented by the same attorney who then represented Lanton in this case.  On Lanton's orders, Lanton's girlfriend and the attorney convinced Christian to sign an affidavit

affirming that "Lanton had no knowledge about the heist," a statement Christian knew was not true.

In December 2012, a federal grand jury returned a one-count indictment against Lanton and Christian, charging the possession offense. Christian pled guilty pursuant to a written plea agreement.

The pre-sentence investigation report ("PSR") calculated a total offense level of 19, applying three adjustments. First, Christian faced a fourteen-level specific offense characteristic based on the amount of loss caused by the theft ring. *See* U.S.S.G. § 2B1.1(b)(1)(H). Second, because the PSR found Christian played a managerial role in the theft ring, Christian received a two-level upward adjustment. *See id*. § 3B1.1(c). And third, the PSR recommended a three-level downward adjustment for acceptance of responsibility. *See id*. § 3E1.1. A lengthy rap sheet landed Christian in criminal history category VI. The PSR therefore set the guideline range at 63–78 months of imprisonment. The Government separately said it would move the court for a substantial-assistance departure under U.S.S.G. § 5K1.1.

Christian objected to the PSR, writing he was not "a leader of the theft crew" and at all times Lanton "was the leader of the group" who issued orders to Christian. Christian's objection drew a PSR addendum, which explained the leadership allegations were "taken directly from the investigative file and confirmed through discussions with the" Government.

What next? Christian's sentencing picture became bleaker. Because he told the Government about the false affidavit during proffer sessions, the Government abandoned plans for a Section 5K1.1 motion. Christian's Halloween 2013 arrest doomed his hopes for an acceptance-of-responsibility adjustment -- Christian knowingly drove a stolen truck at the request of a person who "was part of the theft group." And after that arrest, Christian's attorney abandoned objections to the PSR's amount-of-loss calculation. As a result, the guideline range stood at 84–105 months.

Christian testified at sentencing. The court overruled Christian's objection to the managerial-role adjustment, sentencing him to 105 months of imprisonment.

DISCUSSION

***Legal Standard.***  We review a district court's factual findings for clear error, and defer to its legal conclusion that a defendant had a managerial role in criminal activity.  *See United States v. Washington*, 715 F.3d 975, 982–83 (6th Cir. 2013).  The Government has the burden of proving by a preponderance of the evidence that Section 3B1.1 applies.  *See United States v. Wright*, 747 F.3d 399, 412 (6th Cir. 2014).

Section 3B1.1 and its Commentary contain an adjustment and a departure provision, each applying to different sets of defendants.  The adjustment provision directs that "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" involving fewer than five "participants," the offense level should increase two levels.  U.S.S.G. § 3B1.1(c).  The departure provision explains that an "upward departure *may* be warranted . . . [for] a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization."  *Id.* § 3B1.1, app. n.2 (emphasis added).  "[T]he method by which the defendant's sentence is increased [therefore] depends on whether the defendant exercised control over an individual or over tangible property, assets or activities of a criminal enterprise."  *United States v. Gort-DiDonato*, 109 F.3d 318, 321 (6th Cir. 1997).

The distinction between an adjustment and departure matters.  *See United States v. Ochoa-Gomez*, 777 F.3d 278, 285 & n.6 (5th Cir. 2015) (Prado, J., concurring).  The district court considers the Section 3B1.1 adjustment while calculating a defendant's total offense level.  *See* U.S.S.G. § 1B.1(a)(3).  "Once a sentencing court makes a factual finding as to the applicability of a particular adjustment provision, the court has no discretion, but must increase the offense level by the amount called for in the applicable provision."  *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir. 1991) (discussing Section 3B1.1).  And the adjustment has a determinate impact on a defendant's guideline range, raising the offense level by two to four levels.  *See* U.S.S.G. § 3B1.1(a)–(c).

Contrast the adjustment framework with the departure provision.  A departure is not mandatory, *see id.* § 3B1.1, app. n.2, and Application Note 2 does not dictate the extent of the departure, *see United States v. McFarlane*, 64 F.3d 1235, 1240 n.7 (8th Cir. 1995).  The

departure does not shift the guideline range. A departure "means . . . imposition of a sentence outside the applicable guideline range or of a sentence that is otherwise different from the guideline sentence." U.S.S.G. § 1B1.1, app. n.1(E); *see United States v. Pembrook*, 609 F.3d 381, 385 (6th Cir. 2010) ("[A] defendant's guideline range is the range produced under the guidelines' sentencing table after a correct determination of the defendant's total offense level and criminal history category but prior to any discretionary departures." (quotation marks omitted)). A district court therefore does not consider an upward departure until after calculating the defendant's total offense level, fixing a criminal history category, and selecting the applicable guideline range. *See* U.S.S.G. § 1B.1(a)(3) & (5)–(7), (b).

*District Court Findings*. The court applied a two-level, managerial-role adjustment, but never clearly stated the object of Christian's control. Its oral findings contain contradictory statements, suggesting the court found Christian managed truck-theft-ring participants or, alternatively, only truck-theft-ring property.

The court began by citing the adjustment provision and quoting the departure provision. It then rejected the Government's claim that Christian's directions to his girlfriend showed control over a co-participant, after Christian testified his girlfriend did not know how Christian planned to use the storage unit. The court next mentioned unspecified cases where "individuals received points as an accountant," even though the person "didn't manage any people, but [instead] managed the assets of the criminal enterprise." The court stated, "it was clear [that the accountant] actually had management authority" because "they could say, no, you can't have the [assets or], yes, you can." (Our review of this Court's published opinions, filed since the Sentencing Commission adopted Application Note 2 in 1993, shows no case upholding an adjustment based solely on a defendant's management of criminal assets.)

The court then brought its accountant analogy to bear on Christian's case. On cross-examination, Christian explained how Lanton accessed the Hickory Hills storage unit when Lanton had a buyer for the stolen tires. Access to the storage unit required a code -- presumably used for the storage facility's drive-up gate -- as well as a key to the storage unit's padlock.

Q.      So [Lanton] was doing the selling of the tires, you were creating a place for the tires to be stored?

A.      Yes, sir.

Q.      And then when he had a buyer for the tires, you allowed him to go into the storage facility and gave him those tires for him to sell?

A.      Yes, sir.

Q.      And did you retain the key the entire time?

A.      Did I keep the key?

Q.      Yes.

A.      No, sir, he had the key, but I had the -- I didn't ever give him the code because he was --

Q.      So he needed you to get in the code -- to get in the facility?

A.      Yes, sir.

Q.      So if he had wanted to sell tires, he needed you to get access to those tires, is that correct?

A.      Yes, sir.

Q.      And he couldn't have sold those tires without you, isn't that true?

A.      Yes, sir.

The court explained how it viewed this evidence.

So you can be a person who manages property, and the government says, well, in this case he managed property because he maintained control of the access to the property. He could say yes or no, and he maintained control of the code. That is a type of management. If you can say yes, you can get tires or no, you cannot get tires by denying access to the code, and he clearly understood he was maintaining control, he has testified to that effect, and that's clear, then you are a manager under the application note.

From there, the court considered Christian's role in the Halloween 2013 theft, reasoning that, because Christian drove the stolen truck on his own, his "role has . . . been more than just a pickup guy." At the same time, the court recognized that Christian "wasn't the guy in charge at all," and stated "we have identified people who were in charge here, but he did have control of property." The district court concluded:

So I think the government is right that the two points [are] appropriate. I do think it's a pretty close question, but factually, the government has submitted evidence, and it preponderates in favor of a determination that he was not just a plain ordinary old participant, he was somebody who had managerial supervisory authority at a lower level, and that's why you get two points, you don't get three, you don't get four, so I think that that's correct.

***Procedural Sentencing Error.*** As these statements show, the court emphasized Christian's control of tires and commented that, because of that control, he was a manager "under the application note." The court likewise stated that other people were in charge, and said it agreed with the Government's theory of Christian's role in the offense: Christian "was, in fact, managing and supervising the *items* that are the subject of the heist" because he held the storage unit code. The court did not state that Christian controlled a co-participant.

We give deference to a district court finding that a defendant played a leadership role in criminal activity; such a legal conclusion "depends on a number of factual nuances that a district court is better positioned to evaluate." *Washington*, 715 F.3d at 983. However, when a court determines a defendant's role extended only to management of a criminal enterprise's property, the court errs by applying an adjustment. "To qualify for an adjustment . . . , the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S.S.G. § 3B1.1, app. n.2. The Government may show control over co-participants in many ways, *see United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009), but cannot base an adjustment on property management alone, as was done here.

The Government urges affirmance, stressing the court said Christian "maintained control of the access to the property. He could say yes or no, and he maintained control of the code. That is a type of management." The Government parses that statement to contain a participant-control finding: "But for the Defendant's actual presence and permission, Lanton could not convert the stolen property." We disagree with the Government's reading for two reasons.

First, the court stated that a defendant with such control is "a manager under the application note," and the parties only discussed Application Note 2 for its treatment of a property-manager defendant. Second, there is insufficient evidence supporting the essential part of the Government's argument: Lanton needed Christian's permission to access the storage unit.

Christian did testify that, because Lanton did not know the storage unit code, Lanton "needed [Christian] to get access to th[e] tires." While Lanton may have depended on Christian to access tires, that does not mean Christian controlled Lanton. Offenders often depend on subordinates to sell stolen goods. What is missing in this case is any evidence that Christian

could have, or did, deny Lanton access to the storage unit or its code. There is no explanation why Christian, not Lanton, had the code.

Instead, the record shows the primary ringleader was Lanton. It was Lanton who Patrick Dubose called "the head man over the Mayflower trailer load." It was Lanton who offered to sell tires from the Big M heist to a confidential source, and only Lanton received payment from that source. It was Lanton who "advised Christian to rent the [Hickory Hills] storage unit for the purpose[] of storing stolen tires in [Christian's girlfriend's] name." And it was Lanton who sold the tires from the SDR Trucking heist that were stored at the Hickory Hills storage facility, and who initially gave Christian 125 tires for helping pull the heist.

For purposes of the adjustment, more than one defendant can lead participants in criminal activity. *See* U.S.S.G. § 3B1.1, app. n.4. However, that provision does not help the Government, because all the evidence depicting Lanton and Christian's relationship shows Lanton controlling Christian. A few days after Lanton gave Christian his 125-tire share of the SDR Trucking heist, Lanton reneged and "took over and started selling the [same] tires."

Perhaps most telling, Christian knowingly signed a false affidavit exculpating Lanton at Lanton's request. Christian's action had serious consequences. Before he signed the false affidavit, Christian's PSR-calculated guideline range stood at 63–78 months, with a Government recommendation pursuant to U.S.S.G. § 5K1.1 for a below-guideline-range sentence. Thereafter, Christian lost acceptance-of-responsibility credits and any hope of a Section 5K1.1 motion, raising his PSR-calculated guideline range to 84–105 months. And while Christian likely did not know how his false statement would affect his sentencing range, he certainly knew that by exculpating his sole co-defendant, he effectively agreed to be the "fall guy." That is a sacrifice that a criminal manager rarely makes for a subordinate.

Aside from its purported permission finding, the court made none of the factual findings typical of our Section 3B1.1 adjustment cases. Christian did not receive a larger share of the theft-ring proceeds than other participants. In fact, the record lacks proof that Christian received any payment, other than a share of the SDR Trucking heist that Lanton promptly took back. *See United States v. Bazazpour*, 690 F.3d 796, 805 (6th Cir. 2012). He did not recruit others to join the truck theft ring. *See United States v. Castilla-Lugo*, 699 F.3d 454, 460–61 (6th Cir.

2012). He did not help plan any of the thefts. *See United States v. Hernandez*, 227 F.3d 686, 700 (6th Cir. 2000). He lacked special expertise on which the truck theft ring depended. *See United States v. McDaniel*, 398 F.3d 540, 552 (6th Cir. 2005). He did not provide the group with information that facilitated the crimes. *See United States v. Dupree*, 323 F.3d 480, 494 (6th Cir. 2003). And he did not issue orders to any group member. *See United States v. Khalil*, 279 F.3d 358, 370 (6th Cir. 2002). Without even one of these factual findings, the Government's position is essentially that a "defendant who supplies a good or service to a criminal operation . . . automatically qualif[ies] for the leadership [adjustment] because he or she *could potentially leverage* that role to control the other participants in the operation. Such an outcome is contrary to the letter and spirit of the Sentencing Guidelines." *United States v. Cameron*, 573 F.3d 179, 185 (4th Cir. 2009) (emphasis added).

The evidence simply does not support a Section 3B1.1 adjustment. "[A]n incorrect calculation of the defendant's Guidelines range is reversible procedural error." *United States v. Kamper*, 748 F.3d 728, 749 (6th Cir. 2014). That error requires remand because the court "failed to consider the correct Guidelines range." *United States v. Lane*, 509 F.3d 771, 775 (6th Cir. 2007) (quotation marks and brackets omitted).

#### CONCLUSION

The Government has not asked for a second chance to support the Section 3B1.1 adjustment on remand and, indeed, expressly stated in the district court that it had no other evidence to support the adjustment. Therefore, on remand the district court should re-sentence Christian using a guideline range that is not based on a Section 3B1.1 adjustment. Because we vacate Christian's sentence, we do not decide whether that guideline range should include a fourteen- or twelve-level amount-of-loss adjustment, nor do we reach Christian's other sentencing arguments. Our remand allows the district court to administer Rule 11(c)(5) warnings in the course of re-sentencing, so we do not decide whether the district court's Rule 11 colloquy was plain error.

For these reasons, we vacate Christian's sentence and remand for re-sentencing.