UNITED STATES of America,
Plaintiff–Appellee,

v.

Francisco Javier ARAIZA,
Defendant–Appellant.

No. 15–5462.

United States Court of Appeals,
Sixth Circuit.

March 8, 2016.

BEFORE: DAUGHTREY, MOORE, and STRANCH, Circuit Judges.

OPINION

STRANCH, Circuit Judge.

Francisco Javier Araiza pled guilty to conspiring to distribute methamphetamine in violation of 21 U.S.C. § 846 and using an interstate facility to transfer the proceeds in violation of 18 U.S.C. § 1952(a)(3). The district court, applying enhancements to Araiza's base offense level for possessing a dangerous weapon during and taking a leadership role in the drug offenses, sentenced him to 235 months' imprisonment—the high end of his U.S. Sentencing Guidelines range. Araiza appeals the district court's application of the enhancements. We **AFFIRM**.

## I. BACKGROUND

On two separate occasions in July 2014, federal agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF),

through a confidential informant, purchased methamphetamine and a firearm from Araiza in California. In August, after agreeing to sell the informant three pounds of methamphetamine at $10,000 per pound, Araiza shipped one pound to the informant in Lexington, Kentucky through the U.S. Postal Service.

Araiza directed the informant to make three payments in exchange: $5,000 to Araiza's Bank of America account and $2,500 to two other accounts. Once the informant advised Araiza that Bank of America had no locations in Kentucky, Araiza told the informant to send $2,000 through MoneyGram to Ann Margaret Ballesteros, his co-defendant; an ATF agent did so. By telephone, Araiza introduced the informant to Ballesteros, who subsequently contacted the informant to resolve a hold that had been placed on the MoneyGram funds. Then the informant, with ATF agents, drove to a Bank of America location in Knoxville, Tennessee to deposit the remaining $8,000. Araiza was arrested in California a few days later, but not before mailing the second pound of methamphetamine for next-day delivery. Two sawed-off shotguns were found during the search of his residence.

Araiza was indicted and pled guilty. At sentencing, the district court found that Araiza "possessed a weapon during a time that is certainly relevant and constitutes relevant conduct" and increased Araiza's base offense level by two pursuant to Guidelines § 2D1.1(b)(1). (R. 78, Sentencing Tr., PageID 348.) The district court also applied the two-level enhancement under Guidelines § 3B1.1(c) for being "an organizer, leader, manager, or supervisor" in the criminal activity, finding that Araiza "was a supervisor of Ballesteros" and "directed her activities in obtaining the money that was being transferred." (*Id.* at 349–51.) Application of the two enhance-ments increased the high end of Araiza's Guidelines range to 235 months' imprisonment—the sentence he received.

## II. LEGAL STANDARD

We review a district court's factual findings, including that a defendant possessed a firearm during a drug crime for purposes of Guidelines § 2D1.1(b)(1), under a clearly erroneous standard of review. *United States v. Miggins,* 302 F.3d 384, 390 (6th Cir.2002). A district court's legal conclusions regarding application of the Guidelines generally are reviewed de novo, but our review of a district court's determination that a defendant is a "leader" of a criminal activity under Guidelines § 3B1.1(c) is "deferential." *United States v. Washington,* 715 F.3d 975, 982–83 (6th Cir.2013).

## III. ANALYSIS

Araiza objects to the district court's application of both enhancements. Guidelines § 2D1.1(b)(1) provides a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed." For this enhancement to apply, and to create a rebuttable presumption that the weapon was connected to the offense, the government must prove by a preponderance of the evidence that the defendant actually or constructively possessed the weapon during "relevant conduct." *United States v. Greeno,* 679 F.3d 510, 514 (6th Cir.2012) (quoting *United States v. Faison,* 339 F.3d 518, 520 (6th Cir.2003)). Under the Guidelines, relevant conduct includes "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Faison,* 339 F.3d at 520 (quoting United States Sentencing Commission, *Guidelines Manual,* § 1B1.3(a)(2)). Once the government satisfies its burden, then "the burden shifts to the defendant to show that it was

'clearly improbable' that the weapon was connected to the offense." *United States v. Catalan,* 499 F.3d 604, 606 (6th Cir. 2007). Without a "clearly improbable" showing by the defendant—supported by evidence, not just argument—the enhancement should be applied. *Greeno,* 679 F.3d at 514, 516.

■ Based on testimony of an ATF agent at the sentencing hearing, the government established that each of the two California methamphetamine sales, which were listed as offense conduct in the presentence report, also involved the sale of a firearm, and Araiza admitted that the weapons were present during these transactions. On this record, the government met its initial burden to prove that Araiza possessed the weapon during relevant conduct. Araiza responded that, because the weapons were "in California and the majority of the drug transaction took place in Kentucky" (R. 76, Obj. to PSR, PageID 290), "there is no particular nexus to the drug transaction" (R. 78, Sentencing Tr., PageID 335). But he "did not offer any evidence demonstrating that it was clearly improbable that the firearms were connected to his drug offense and, thus, did not meet his burden." *See Greeno,* 679 F.3d at 516. Accordingly, the district court did not clearly err by applying the enhancement at Guidelines § 2D1.1(b)(1).

■ Guidelines § 3B1.1(c) contains a two-level enhancement for a defendant who was "an organizer, leader, manager, or supervisor in any criminal activity" with one or more, but less than five, other participants. *See* USSG § 3B1.1, comment. (n. 2) (Nov. 2014). A defendant qualifies for a leadership enhancement if the government establishes, by a preponderance of the evidence, "that he has exercised decisionmaking authority, recruited accomplices, received a larger share of the profits, was instrumental in the planning phase of the criminal venture, or exercised control or authority over at least one accomplice." *United States v. Vasquez,* 560 F.3d 461, 473 (6th Cir.2009); *see United States v. Christian,* 804 F.3d 819, 822 (6th Cir.2015). "A district court need not find each factor in order to warrant an enhancement." *United States v. Castilla–Lugo,* 699 F.3d 454, 460 (6th Cir.2012).

Araiza claimed that he was "merely a 'grunt' and a middleman." (R. 76, Obj. to PSR, PageID 290.) On the contrary, the record indicates that Araiza claimed a right to a larger share of the proceeds by ordering the informant to place a higher amount in his bank account, planned and arranged the MoneyGram payment, and directed Ballesteros in receiving that payment. We defer to the district court's finding that Araiza was a leader of the criminal activity. *See, e.g., United States v. Davis,* 306 F.3d 398, 424 (6th Cir.2002); *United States v. Layne,* 192 F.3d 556, 578–79 (6th Cir.1999).

## IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's application of the enhancements found at Guidelines § 2D1.1(b)(1) and § 3B1.1(c).