NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0482n.06

Case Nos. 20-3019/3223/3393

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Oct 26, 2021<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| JOSEPH P. GRAY, JR., LARRY JACKSON, and SHONDELL MACK, | ) ) ) | |
| Defendants-Appellants. | ) ) ) | OPINION |

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. An organization called the "Grovewood Boys" trafficked heroin, often mixed with fentanyl or fentanyl analogues, and crack cocaine in east Cleveland, Ohio. Three group members, who pleaded guilty, bring this appeal. Two, Joseph Gray, Jr. and Shondell Mack, challenge their sentences. The third, Larry Jackson, argues that his guilty plea is invalid. None of these arguments has merit, so we affirm.

I.

We need only summarize this sprawling conspiracy to resolve these appeals. In total, twenty-two defendants were indicted for their role in the organization; all pleaded guilty.

Law enforcement began investigating the Grovewood Boys in January 2018. Wiretaps revealed that the group obtained drugs in bulk quantities and divided them for re-sale among the members. Dealers either sold to their own customer bases or communicated with customers via a single, shared phone line open to any customer. Known as the "customer phone," this device was

passed among the various dealers. When a physical phone became unusable, the customer phone's number and data was simply transferred to a new device. As a result, potential customers could reach the Grovewood Boys nearly twenty-four hours a day.

The Grovewood Boys said they dealt heroin and cocaine. But their labels were inaccurate: the "heroin" was more often fentanyl, fentanyl analogues, or heroin laced with fentanyl or its analogues; the "cocaine" was usually crack cocaine. Slang was commonplace in the transactions: the heroin or fentanyl was called "boy," while the crack cocaine was called "girl." The dealers operated primarily on the east side of Cleveland and in nearby suburbs.

The defendants here were members of the Grovewood Boys. Their roles in the conspiracy varied, and different parts of the proceedings below are relevant to each appeal, so we address each defendant separately.

*Joseph P. Gray.* When a dealer needed access to the customer phone, he "had to go through Joseph Gray." Gray monitored dealers' supply levels, obtained the bulk drugs, and coordinated the sales to customers. Put simply, he led the Grovewood Boys. A federal grand jury returned a twenty-two count indictment against Gray, which included one charge for conspiracy to possess with intent to distribute controlled substances, two charges for distribution, eight charges for possession with intent to distribute, two firearms-related charges, and nine counts for using a communication facility in furtherance of a drug trafficking crime.

He pleaded guilty to the indictment without an agreement. In its presentence investigation report (PSR), the probation office determined that Gray was responsible for 1,528 grams of heroin and fentanyl analogues and 992.5 grams of cocaine base, or crack cocaine. Converted to 15,280

kilograms and 992.5 kilograms, respectively, he was responsible for 16,272.5 kilograms of converted drug weight.[1] It thus recommended an initial base offense level of 34. USSG § 2D1.1(c)(3).

The PSR also suggested three enhancements and one reduction. For engaging in a pattern of criminal conduct as a livelihood, it applied the two-level increase of § 2D1.1(b)(16)(E). Another increase of four levels applied under § 3B1.1(a) because of his leadership role. And the PSR applied a two-level increase under § 3C1.2 for fleeing from police in a residential area. After a three-level decrease for acceptance of responsibility, § 3E1.1, the resultant offense level of 39 and criminal history category of VI produced a 360-months to life guidelines range recommendation.

Gray objected to the drug quantity calculation and to each recommended enhancement.[2] In response, the government presented testimony from Drug Enforcement Administration Task Force Officer Orlando Almonte at the sentencing hearing. Officer Almonte first addressed the drug quantity calculation. He explained that both Gray's personal phone and the customer phone were intercepted from October to December 2018. For forty-eight days, officers tracked any transaction agreed to over these phones. They also tested drugs seized during traffic stops or in controlled buys. Lab results confirmed that the heroin was most often a mixture of heroin and fentanyl or its analogues. The crack cocaine seized generally was not mixed with other substances. Officer Almonte testified that these tested samples were a fair representation of the organization's usual product.

Gray nevertheless argued that because he did not plead guilty to some conduct mentioned in Officer Almonte's testimony and the PSR, the district court should err conservatively and apply

---

[1] The parties do not address a miscalculation here: 992.5 grams of cocaine base would convert to approximately 3,544.2 kilograms, not 992.5 kilograms, of converted drug weight. *See* USSG § 2D1.1 cmt. n.8(D) (converting one gram of cocaine base to 3,571 grams of converted drug weight). This undercounting did not affect Gray's offense level. USSG § 2D1.1(c)(3).

[2] He ultimately declined to pursue his initial objection to the lifestyle enhancement of § 2D1.1(b)(16)(E), so we do not address it here.

an offense level of 32. It declined and stuck with the recommended offense level of 34, finding that the government established the drug quantity by a preponderance of the evidence based on the testimony, the lab reports, and the wide-ranging nature of the conspiracy. Further, officers counted only transactions agreed to over intercepted phone lines during the forty-eight day period. Because the deal must have been clear on substance and quantity or price, many drug deals were undoubtedly excluded from the calculation.

Gray next argued that his role in the conspiracy warranted only the two-level increase of § 3B1.1(c), but not the four-level increase of subsection (a).[3] The district court again heard from Officer Almonte, who testified that dealers had to go through Gray to access the customer phone and sell drugs. He also organized testers to sample the product and determine its potency. Even from jail, Gray gave his co-conspirators instructions on replacing the customer phone. Based on this testimony and the conduct described in the PSR, the district court overruled Gray's objection to the four-level increase.

Finally, Gray objected to the two-level increase for reckless endangerment during flight. The government justified the enhancement with two incidents: a pursuit on September 6, 2018, in a residential area near a school zone at speeds of over 60 miles per hour, and a high-speed pursuit on January 8, 2019, on Interstate 90 and the streets of Cleveland where, after stopping his vehicle, Gray dropped a loaded pistol before fleeing on foot. He admitted to these incidents. But, he said, the government did not establish the potential risk of harm. Unpersuaded, the district court overruled the final objection.

The district court then turned to determining a proper sentence. It heard from the mother of an overdose victim who purchased his drugs from a member of the Grovewood Boys. Gray and

---

[3] On appeal, Gray acknowledges that § 3B1.1(c) could not apply to this conspiracy of five or more people.

his counsel also had the opportunity to address the court, and the government sought a life sentence. The district court then weighed each of the factors of 18 U.S.C. § 3553(a), focusing on the size of the conspiracy, Gray's attempts to flee from law enforcement, and his prior convictions. It paid particular attention to the effects of Gray's drug dealing on his community and his lack of remorse for the damage it caused. Finding a lengthy sentence essential, it imposed an aggregate 480-month term of imprisonment.

*Shondell Mack.* Mack's role in the Grovewood Boys was not quite so large. He was one of many dealers who operated the customer phone. Ultimately, he was indicted on one conspiracy charge and one count of using a communication facility in furtherance of a drug trafficking crime. He pleaded guilty with a plea agreement.

Mack and the government agreed to recommend a within-guidelines sentence to the district court. Initially, that range was calculated at 37–46 months. But at his first sentencing hearing, the district court gave "the parties notice of a substantial possible upward variance" because that range "may not be anywhere near sufficient[:]"

> We have a defendant here who is on bond and commits three separate drug offense—or two drug offense-related cases, not to mention the federal case, and then is involved in a very serious matter . . . involving the theft of 60 stolen firearms. So I'm going to make sure both sides have a fair opportunity to argue. I contemplate a substantial upward variance from the guidelines based upon everything I've just indicated.

The district court gave the parties over a month to prepare for a second hearing.

Prior to that sentencing hearing, an updated PSR suggested a 57–71 month guidelines range. Mack and the government agreed to that calculation. But the district court found it insufficient to meet the goals of § 3553(a). For one, it found Mack was "an extremely high risk offender" because of his history of violence towards women and his numerous prior arrests. It

also determined that a variance was necessary to protect the public from Mack and deter him from future crimes. Varying upward, it imposed a 96-month sentence.

*Larry Jackson.* Jackson, another Grovewood Boy, also dealt drugs. He was indicted on one conspiracy charge, two charges of possession with intent to distribute, and one charge of using a communication facility in furtherance of a drug trafficking crime. He pleaded guilty and was sentenced to a 210-month term of imprisonment. His appeal concerns only the validity of his guilty plea, so we focus here on the facts surrounding that process.

Recall that twenty-two defendants were named in the indictment. So, when the district court held its first status conference on April 3, 2019, it emphasized the need for a cutoff date for guilty pleas. By mid-May, the district court decided on a plea deadline of August 12, 2019. Jackson received an offer by that date, but he rejected it at an August 14 hearing. To ensure he would not suffer any "buyer's remorse," the district court discussed the terms of that proposed agreement with Jackson at the hearing.

New information about Jackson's career offender status apparently changed his decision. He moved on August 30 for an extension of the plea deadline. A change of plea hearing was set for the next week but cancelled by the district court for reasons unspecified in our record. Jackson again notified the district court of his intent to change his plea on September 27, prior to a September 30 pretrial conference.

The parties came to the pretrial conference with the previously rejected plea agreement, saying new "highly material and highly inculpatory evidence," along with Jackson's likely career offender status, explained the delay. Jackson was now ready to accept the agreement. But the district court rejected the parties' reasons for the late agreement:

> [I]f you think I'm going to take a plea today and he is going to get acceptance of responsibility when we have a week between now and trial, after everyone else

came in here and pled guilty timely, then you have another thing coming. . . . And candidly I don't know why I should take it at all. My order says if you're going to enter a plea, any plea after the date of the plea deadline will be to the indictment. And this is a last-minute hearing that we had now scheduled on a Plea Agreement that he could have considered some time ago.

If he wants to plead to the indictment, I'll accept the plea. I'm not taking a Plea Agreement in this case right now. . . . Deadlines mean something, Counsel. Don't ignore them willfully.

Jackson ultimately decided to plead guilty to the indictment, and the district court conducted a full change-of-plea hearing before accepting his guilty plea.

II.

Both Gray and Mack appeal their sentences, and we review them for procedural and substantive reasonableness. A sentence is procedurally reasonable when the district court properly calculates the guidelines range, considers the sentencing factors in 18 U.S.C. § 3553(a), and adequately explains the sentence imposed. *Gall v. United States*, 552 U.S. 38, 51 (2007). We determine whether a sentence is procedurally reasonable under the abuse-of-discretion standard of review. *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018) (citing *United States v. Bolds*, 511 F.3d 568, 579 (6th Cir. 2007)). The district court's "factual findings will stand unless clearly erroneous," and its legal conclusions are reviewed de novo. *Id.*

If procedurally sound, we assess the sentence's substantive reasonableness. "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010); *see also United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008) ("A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553 factors or gives an unreasonable amount of weight to any pertinent factor." (cleaned up)). Substantive reasonableness is also reviewed for abuse of discretion. *United States v. Wandahsega*,

924 F.3d 868, 886 (6th Cir. 2019) (citing *Gall*, 552 U.S. at 51). And because balancing the § 3553(a) factors "is a matter of reasoned discretion, not math," our review here is "highly deferential." *Rayyan*, 885 F.3d at 442 (citing *Gall*, 552 U.S. at 51).

A. GRAY'S SENTENCE

      1. Procedural Reasonableness

Gray challenges three aspects of the district court's calculation of his guidelines range: its drug quantity calculation and its application of the leadership-role and reckless-endangerment increases. We address each in turn.

*Drug Quantity.* When a defendant is held responsible for drugs not seized by law enforcement, a district court must approximate the drug quantity. *See* USSG § 2D1.1 cmt. n.5. We must accept that approximation "unless clearly erroneous." *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir. 1990) (citing *United States v. Barrett*, 890 F.2d 855, 867 (6th Cir. 1989)). A district court avoids clear error here by following several rules: facts must "have some minimal indicium of reliability beyond mere allegation," *United States v. Smith*, 887 F.2d 104, 108 (6th Cir. 1989) (quotation omitted); any amount attributed to the defendant's conspiracy must be known or reasonably foreseeable to the defendant, *Walton*, 908 F.2d at 1301; and the court should "err on the side of caution in making its estimate," *United States v. Sandridge*, 385 F.3d 1032, 1037 (6th Cir. 2004) (quoting *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000)). Ultimately, we will not second-guess "[a]n approximation . . . supported by competent evidence in the record." *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995).

The district court's calculation here was fully supported by competent evidence in the record. It heard testimony that law enforcement intercepted phones for forty-eight days, counting only drug transactions where substance and an agreed quantity or price were confirmed. Officers

tested drugs seized from the conspiracy to confirm that fentanyl and its analogues were present in almost all heroin. Further, because of the short window of intercepted calls, that final figure left out a significant amount of drug sales attributable to Gray. *See United States v. Jeross*, 521 F.3d 562, 571 (6th Cir. 2008) (citation omitted) ("[T]he district court appropriately exercised caution" where a defendant "was more likely actually responsible for a quantity greater than or equal to the amount used in calculating the sentence." (citation omitted)).

Gray did not contest the government's evidence. Rather, he urged the district court to "err[] conservatively for an offense level of 32, rather than 34, based on what was actually pled guilty to." He makes a similar argument here, suggesting that erring on the side of caution requires "taking a conservati[ve] estimate then discounting that estimate to protect the defendant's due process rights." Not so. A court errs on the side of caution when, presented with "a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity," it selects the quantity supported by a preponderance of the evidence. *Walton*, 908 F.2d at 1302. The district court here was given *one* plausible, conservative estimate and determined it was supported by competent evidence.

Now on appeal, Gray argues for the first time that the district court erred by counting 1,528 grams of fentanyl analogue and 922.5 grams of cocaine base, when, in his view, those substances were present in only some of the drugs. This new argument is entitled only to plain-error review. *United States v. Johnson*, 627 F.3d 578, 585 (6th Cir. 2010) (citation omitted). But Gray can only argue error occurred by ignoring the evidence in the record. The district court heard testimony that the vast majority of the Grovewood Boys' heroin contained fentanyl or its analogues and their cocaine was almost always crack cocaine. It cited this testimony, lab reports, and other

uncontested facts in overruling Gray's objections. Its reliance on this evidence did not affect Gray's substantial rights.

*Leadership Role.* A sentencing court can apply a four-level increase when a defendant organized or led a criminal activity involving five or more people. USSG § 3B1.1(a). To qualify, he "must have exerted control over at least one individual" within the conspiracy. *United States v. Gort-Didonato*, 109 F.3d 318, 321 (6th Cir. 1997). Neither being an essential part of a conspiracy nor managing its property makes a defendant a leader or organizer. *United States v. Christian*, 804 F.3d 819, 824 (6th Cir. 2015); *United States v. Vandeberg*, 201 F.3d 805, 811–12 (6th Cir. 2000) (citing *United States v. Albers*, 93 F.3d 1469, 1487 (10th Cir. 1996)). Instead, courts look to a defendant's receipt of a larger share of profits, recruitment of co-conspirators, planning, special expertise, providing special information to facilitate the crime, or issuing orders. *See Christian*, 804 F.3d at 825 (collecting cases). We review the district court's factual findings for clear error and defer to its conclusion that Gray led this conspiracy. *Id.* at 822 (citing *United States v. Washington*, 715 F.3d 875, 982–83 (6th Cir. 2013)).

Gray argues that his occasional control of the customer phone makes him a manager, but not a leader, of the Grovewood Boys. But the district court did not only find that Gray controlled the customer phone; it also heard testimony that Gray decided who could access the phone, instructed others on replacing the phone, and organized people to test the drugs prior to sale. In addition, the court relied on the uncontested facts in the PSR, including Gray's involvement in monitoring drug supplies, obtaining bulk quantities of drugs, and coordinating the sale by other co-conspirators. It did not err in determining that Gray was a leader or organizer of this conspiracy.

*Reckless Endangerment.* The guidelines also call for a two-level offense level increase where a defendant recklessly endangers others while fleeing from law enforcement. USSG § 3C1.2. His

flight must create a substantial risk of death or serious bodily injury to another person and be sufficiently related to the offense of conviction. *United States v. Dial*, 524 F.3d 783, 786–87 (6th Cir. 2008) (quoting *United States v. Southerland*, 405 F.3d 263, 268 (5th Cir. 2005)). This "mixed question of law and fact" is "highly fact-based," so "we give 'significant deference to the district court.'" *Id.* at 785 (quoting *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005)). Here, the district court applied the enhancement based on both of Gray's flights from law enforcement.

Gray makes two arguments on appeal, both meritless. He first suggests that the September 6 incident—where an attempted traffic stop became a pursuit at over 60 miles per hour in a residential neighborhood—was not related to the offenses of conviction. The indictment suggests otherwise, as it charges Gray with flight from police during the conspiracy. The record also states that traffic stops were a common method used by law enforcement to apprehend members of the conspiracy. Our caselaw further suggests that defendants who flee from law enforcement during the timeframe of a conspiracy's existence and in its geographic area of operation readily meet the nexus requirement. *Dial*, 524 F.3d at 788–89.

He also argues that his January 8 flight "shows no more than ordinary risk, not substantial risk of serious bodily injury[.]" Uncontested evidence of "a high speed chase where others are likely to be nearby" alone meets the substantial risk requirement of § 3C1.2. *See Hazelwood*, 398 F.3d at 796 (collecting cases). The loaded pistol he dropped while continuing his flight further weakens his claim. *See United States v. Stafford*, 721 F.3d 380, 402 (6th Cir. 2013) (citing *United States v. Howard*, 301 F. App'x 446, 449 (6th Cir. 2008)) (upholding a § 3C1.2 enhancement where a defendant discarded a loaded gun in a public place). The district court committed no error in applying this enhancement.

2. Substantive Reasonableness

Turning now to substantive reasonableness, Gray faces the "presumption of reasonableness" we apply to a within-guidelines sentence. *Gall*, 552 U.S. at 51 (citing *Rita v. United States*, 551 U.S. 338, 347 (2007)). He argues that the district court over-emphasized any need to protect the public. But his argument amounts to a request that we "balance the factors *differently* than the district court did." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). Such re-balancing is "beyond the scope of our appellate review." *Id.*; *see also United States v. Pyles*, 904 F.3d 422, 426 (6th Cir. 2018) ("We have no warrant to reweigh the § 3553(a) factors ourselves."). As we noted above, applying § 3553(a) involves "reasoned discretion, not math." *Rayyan*, 885 F.3d at 442. The district court here faced a defendant who had dealt a significant amount of drugs and showed no remorse for his crimes or their consequences. It did not abuse its discretion in imposing a within-guidelines sentence on this record.

B. MACK'S SENTENCE

1. Procedural Reasonableness

Mack argues that the district court erred procedurally in failing to conduct an upward departure analysis before varying upward at sentencing. But when given the opportunity at sentencing, he failed to object. *United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004). Accordingly, we review the district court's decision to apply an upward variance for plain error. *United States v. Rosenbaum*, 585 F.3d 259, 266–67 (6th Cir. 2009) (citing *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc)). To prevail under this standard, Mack must show an obvious or clear error that affected both his substantial rights *and* "the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Hall*, 979 F.3d 1107, 1119 (6th Cir. 2020) (quoting *United States v. Wells*, 623 F.3d 332, 337 (6th Cir. 2010)).

First, to clarify a confusion in Mack's argument: a "departure" happens when a district court applies a particular guidelines provision to impose a sentence outside the advisory range or assign a different criminal history category, while a "variance" occurs when the district court selects a sentence outside the guidelines range after weighing the factors of 18 U.S.C. § 3553(a). *United States v. Grams*, 566 F.3d 683, 686–87 (6th Cir. 2009). The two concepts are distinct; hence, the procedures associated with a departure are not required when a district court varies upward. *United States v. Denny*, 653 F.3d 415, 419–20 (6th Cir. 2011). We have said "it behooves a district court to indicate clearly whether it is 'departing' or 'varying' when it elects to deviate from the sentencing guidelines." *Id.* (citing *United States v. Stewart*, 628 F.3d 246, 259 (6th Cir. 2010)).

Here, the district court varied upward, so Mack's procedural arguments falter. A district court need not provide notice when "contemplating a variance." *Irizarry v. United States*, 553 U.S. 708, 714–16 (2008). Rather, it should "make sure that the information provided to the parties in advance of the hearing, and in the hearing itself, has given them an adequate opportunity to confront and debate the relevant issues." *Id.* at 715. It did so here. The parties knew the district court was considering "a substantial possible upward variance" and were given an additional month to prepare to address the issues. And at sentencing, the district court considered the § 3553(a) factors alongside the uncontested facts in the record when explaining its decision to vary upward. This was not plain error.

2. Substantive Reasonableness

Mack also claims that his sentence was substantively unreasonable. We again conduct a "highly deferential" review of the district court's balancing of the factors of § 3553(a). *Rayyan*, 885 F.3d at 442 (citing *Gall*, 552 U.S. at 51). This above-guidelines sentence "is neither presumptively reasonable nor presumptively unreasonable." *United States v. Robinson*, 892 F.3d 209, 212 (6th Cir.

2018) (citing *United States v. Robinson*, 813 F.3d 251, 264 (6th Cir. 2016)). And in imposing it, the district court must have "consider[ed] the extent of the deviation and ensure[d] that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50.

The district court did not abuse its discretion by varying upward. As it noted, the district court was not required to follow the guidelines. *Gall*, 552 U.S. at 49–50. After considering Mack's history with drugs, firearms, and domestic violence, along with the leniency he had received in state court, it determined that the guidelines recommendation was not sufficient to protect the public and deter future criminal behavior. It then imposed a 96-month term of imprisonment, 25 months above the upper-end of Mack's guidelines range. We do not weigh the sentencing factors anew. *Ely*, 468 F.3d at 404. Rather, we only confirm that the district court "properly considered" each of the factors of § 3553(a) and "gave ample explanation" for its upward variance. *United States v. Bass*, 785 F.3d 1043, 1052 (6th Cir. 2015). It did, so the sentence was substantively reasonable.

## III.

Lastly, we address Jackson's argument that his guilty plea was invalid. In his view, the district court exerted undue influence over him and, in doing so, violated Federal Rule of Criminal Procedure 11(c). Because he makes this argument for the first time on appeal, we review for plain error. *See United States v. Webb*, 403 F.3d 373, 378 (6th Cir. 2005) (quoting *United States v. Vonn*, 535 U.S. 55, 59 (2002)) (requiring defendants "to object contemporaneously to the district court's alleged failure to comply with the requirements of Rule 11" to avoid plain-error review). So he "can prevail only if he shows that the district court made a plain error that affected his substantial rights and the fundamental fairness of the sentencing proceeding." *United States v. Pyles*, 904 F.3d 422, 426 (6th Cir. 2018) (citing *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc)).

Rule 11(c) proscribes a district court's participation in plea discussions. FED. R. CRIM. P. 11(c)(1). Additionally, a guilty plea must be entered voluntarily, knowingly, and intelligently. *Brady v. United States*, 397 U.S. 742, 748 (1970). Pleas are voluntary when the defendant understands the charges against him and the constitutional protections he is waiving, and they are knowing and intelligent if he is aware of the circumstances and consequences of his decision. *See Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Brady*, 397 U.S. at 748. Jackson says his plea was not made voluntarily or intelligently because the district court set a plea deadline, threatened to deny an acceptance of responsibility decrease after untimely pleas, and discussed a rejected plea agreement with Jackson. None of those actions constitute plain error.

To start, the plea deadline in this case was not designed to encourage guilty pleas. The district court told all twenty-two defendants that "[n]o one is suggesting you must [plead guilty], or it's not the purpose of the suggestion, but there has to be a deadline, a deadline by which the parties can complete if they would like and that also will be a date, if they wish, [that] will have implications for acceptance of responsibility." Far from a device used to manipulate defendants into pleading guilty, the record shows that this deadline allowed the district court to manage this complicated criminal matter. Jackson can identify no authority disallowing a district court's management of its case in this way.

Nor can he show that the district court's discussion of his acceptance of responsibility credit was plain error. We have held that "[d]istrict courts may consider the timeliness of a defendant's plea under § 3E1.1(a) only to the extent that timeliness reflects the extent of the defendant's sincerity in accepting responsibility." *United States v. Hollis*, 823 F.3d 1045, 1047–48 (6th Cir. 2016) (citing *United States v. Kumar*, 617 F.3d 612, 637 (2d Cir. 2010)). And nothing in the district court's suggestion that the plea deadline "will have implications for acceptance of responsibility" signals its

intention to ignore the limits of *Hollis*. So Jackson's arguments amount to an invitation to reverse his convictions because the district court, in implementing a plea deadline, promised to consider a relevant factor when calculating his offense level. We decline that invitation.

Finally, Jackson suggests the district court erred in discussing a proposed plea agreement with him to confirm he rejected it. But the district court made clear that Jackson had no obligation to accept the plea agreement; it merely sought confirmation that Jackson knew the terms of the rejected offer to avoid a later claim that he would have accepted the offer had he been fully aware of it. And when Jackson later sought to accept the agreement one week before trial, this discussion became relevant to the district court's decision to enforce its plea cutoff date. The district court did not improperly engage in plea discussions by explaining the consequences of rejecting the plea offer.

In short, no plain error occurred here. The district court permissibly enforced a plea deadline. And in accepting Jackson's guilty plea to the counts in the indictment, and at each step prior to that point, it ensured Jackson was aware of the charges against him and the consequences of his decision to plead guilty. We have no reason to doubt the validity of Jackson's choice.

IV.

Gray and Mack's sentences were both procedurally and substantively reasonable. And the district court committed no plain error in accepting Jackson's knowing and voluntary guilty plea. We therefore affirm.

SILER, Circuit Judge, concurring. I concur in the majority opinion in full, but I bring attention to the two-level offense increase for Gray under USSG § 3C1.2 when he recklessly drove a vehicle when fleeing from law enforcement. The majority opinion indicates that in order to impose this increase, the defendant's flight from law enforcement must create a substantial risk of death or serious bodily injury to another person "and be sufficiently related to the offense of the conviction," citing *United States v. Dial*, 524 F.3d 783, 786-787 (6th Cir. 2008). Although our court held in *Dial* that the increase must be based on conduct which is related to the offense of conviction, I then felt that it was "not necessary to find a nexus requirement embedded in USSG § 3C1.2," and I would do so in this case if it were not for the majority opinion in *Dial*. The language in § 3C1.2 does not require a nexus to the offense. Nevertheless, the flight which led to the enhancement in this case was a charged overt act in the conspiracy, so the reckless conduct was related to the offense charged.