NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0137n.06

Case No. 25-3144

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | ) | **FILED** |
| | | Mar 13, 2026 |
| | | KELLY L. STEPHENS, Clerk |
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| | ) | |
| KEVIN WILLIE CARTER, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: STRANCH, READLER, and BLOOMEKATZ, Circuit Judges.

READLER, Circuit Judge. Following charges for violating a host of federal drug trafficking, money laundering, gun, and racketeering laws, Kevin Willie Carter pleaded guilty to five counts, including a drug conspiracy charge. At sentencing, the U.S. Probation Office recommended two Guidelines enhancements: one for Carter's leadership role in the conspiracy, and another for Carter having maintained a premises for drug trafficking. Over Carter's objection, the district court applied both enhancements and ultimately sentenced Carter to 264 months of imprisonment. On appeal, Carter challenges the two enhancements that informed his Guidelines range. Seeing no error, we affirm.

I.

While wiretapping a suspected fentanyl supplier's cell phone, FBI agents overheard parties discussing a drug transaction. One of those parties was Kevin Carter. An investigation into Carter revealed that he was a central figure in an elaborate drug trafficking operation stretching from

Ohio to Arizona. In this capacity, Carter arranged for his associates to purchase narcotics, which Carter would later sell to other dealers. As the investigation progressed, officers searched Carter's home and a music studio he controlled. In all, officers unearthed a significant array of narcotics, thousands of dollars in cash, firearms, nine cell phones, and other drug trafficking paraphernalia. These efforts culminated in a grand jury returning a 103-count indictment against Carter and 21 co-defendants.

Carter eventually agreed to plead guilty to five counts, including a charge for conspiring with his co-defendants to distribute cocaine, fentanyl, methamphetamine, heroin, PCP, and marijuana. In his plea agreement, Carter accepted a factual summary of his crimes, which described his role in directing and organizing the conspiracy. Prior to sentencing, the U.S. Probation Office prepared a presentence report (or PSR) detailing Carter's offenses and criminal history, all of which was used to calculate an advisory Guidelines range. The PSR recommended applying a four-level, aggravating role enhancement found at United States Sentencing Guidelines Manual § 3B1.1(a) on the grounds that Carter was the organizer or leader of a criminal activity involving five or more participants or that was otherwise extensive. The PSR also suggested adding two points to Carter's base offense level score because he maintained a premises for the purpose of manufacturing or distributing a controlled substance within the meaning of United States Sentencing Guidelines Manual § 2D1.1(b)(12). In the end, probation calculated a Guidelines range of 360 months to life. While Carter never disputed the underlying facts detailed in the PSR, he did challenge whether those facts supported the respective leadership and premises enhancements. Over Carter's objections, the district court agreed with the PSR's calculations and, varying downward, sentenced Carter to a total of 264 months in prison. This appeal, which echoes Carter's challenges in district court, followed.

II.

Begin with the aggravating role enhancement. Guidelines § 3B1.1(a) enhances a defendant's base offense level by four points "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S. Sent'g Guidelines Manual § 3B1.1(a) (U.S. Sent'g Comm'n 2024). Carter takes issue with the district court's conclusion that he was an "organizer or leader" of the criminal activity. To so qualify, Carter need only "be a leader of one or more other participants" within the activity. *United States v. Taylor*, 85 F.4th 386, 390 (6th Cir. 2023) (citation modified). And that leadership may be reflected in any number of ways, including by exercising decisionmaking authority, recruiting accomplices, receiving a large share of the profits, being instrumental in planning the crime, or exercising control or authority over accomplices. *See United States v. Vasquez*, 560 F.3d 461, 473 (6th Cir. 2009). Given the "fact-intensive" nature of the inquiry, we review the district court's decision to grant a leadership enhancement "deferentially." *United States v. Minter*, 80 F.4th 753, 758 (6th Cir. 2023).

Against this backdrop, we see no error in the district court's determination. Consider the undisputed facts found in Carter's plea agreement and PSR, which together reveal numerous examples of Carter overseeing his co-conspirators by having them test drugs, rent vehicles, distribute narcotics, or retrieve drug profits on his behalf. In one instance, Carter "request[ed]" that two individuals, including his girlfriend, Antonesha Dixon, take a Greyhound bus to Phoenix to pick up fentanyl pills to bring back to Ohio. *See* PSR, R. 527, PageID#3916, 3919. Once the pair did so, Carter "directed" Dixon to wire $2,000 to the fentanyl supplier for more pills. *See* Plea Agreement, R. 507, PageID#3552. In another instance, Carter "had" a drug courier "provide" him with a drone to deliver narcotics to an inmate at an Ohio state prison. *See* PSR, R. 527,

3

PageID#3916, 3920.  All told, Carter exercised decisionmaking authority, was key in planning the conspiracy, and repeatedly directed the actions of several co-conspirators.  *See Vasquez*, 560 F.3d at 473.  Accordingly, the district court did not err in concluding that the record was "replete" with examples to support the enhancement.  Sentencing Tr., R. 545, PageID#4149.

Resisting this conclusion, Carter asserts that there is no evidence that he personally benefited from the transactions he oversaw.  Carter's argument suffers from a questionable factual premise—recall that investigators unearthed thousands of dollars at Carter's residence and recording studio.  But more than that, it is legally flawed.  We agree with Carter that evidence that a defendant obtained a large share of the fruits of the crime can help support the aggravating role enhancement.  *See, e.g.*, *United States v. Araiza*, 643 F. App'x 524, 526 (6th Cir. 2016).  But that is just one of many factors relevant to the inquiry, and a district court need not find each factor applicable to warrant the enhancement.  *See United States v. Castilla–Lugo*, 699 F.3d 454, 460 (6th Cir. 2012) (citing *United States v. Gates*, 461 F.3d 703, 709 (6th Cir. 2006)).  With ample evidence showing Carter was directing the actions of at least one individual to further the aims of the extensive drug conspiracy, no error occurred in applying the four-point enhancement.  *See Taylor*, 85 F.4th at 390.

Turn then to the premises enhancement.  Guidelines § 2D1.1(b)(12) applies if Carter "(1) knowingly (2) open[ed] or maintain[ed] any place (3) for the purpose of manufacturing or distributing a controlled substance."  *United States v. Johnson*, 737 F.3d 444, 447 (6th Cir. 2013).  Carter focuses his arguments on the purpose prong.  The evidentiary bar to show that a particular location was maintained for the purpose of manufacturing or distributing narcotics is "relatively low."  *See United States v. Terry*, 83 F.4th 1039, 1044 (6th Cir. 2023) (quoting *United States v. Leggett*, 800 F. App'x 378, 381 (6th Cir. 2020)).  Indeed, the enhancement can apply even if the

space in question was also used for a non-drug related purpose, so long as one of the primary or principal uses of the property was for drug trafficking. *See United States v. Simpson*, 138 F.4th 438, 456 (6th Cir. 2025); U.S. Sent'g Guidelines Manual § 2D1.1 cmt. n.17 (U.S. Sent'g Comm'n 2025). As Carter does not contest the facts underlying the enhancement, we review the application of the enhancement with fresh eyes. *United States v. Tripplet*, 112 F.4th 428, 432 (6th Cir. 2024).

Here, the district court applied the enhancement based on Carter's maintenance of two locations: his home that he shared with Dixon and the recording studio. Yet as "maintaining even a single premises for drug trafficking" suffices to apply the enhancement, our review can begin and end with the recording studio. *See United States v. Richardson*, No. 22-3810, 2024 WL 4816885, at *2 (6th Cir. Nov. 18, 2024). Consider what the district court knew about that location. Carter "controlled" the studio, having sole access to the location through a keypad, whose code he would provide to other participants in the conspiracy. *See* Plea Agreement, R. 507, PageID#3554. While there was some music equipment in the studio (consistent with it being a recording studio), the district court found that a primary purpose of the studio was to distribute controlled substances. Surveillance suggested that Carter conducted numerous drug deals at the studio, with individuals entering the studio to engage in drug trafficking. Carter also used the studio for storing drugs. A search of the premises revealed over 50 grams of methamphetamine, nearly 50 grams of heroin, and roughly a dozen grams of fentanyl mixed with heroin, along with other trappings consistent with manufacturing and distributing narcotics from the studio. This evidence suffices to establish that a primary purpose of Carter maintaining the studio was for distributing drugs. *See Terry*, 83 F.4th at 1044. Contrary to Carter's assertion, the existence of drug transactions at premises other than the studio does nothing to diminish the studio's status as a premises used for the purpose of

manufacturing and distributing drugs.  *See Richardson*, 2024 WL 4816885, at \*2.  All told, the district court committed no error in its calculation of Carter's Guidelines range.

\*      \*      \*      \*      \*

We affirm.